OPINION OF THE COURT
Norman C. Ryp, J.
Does People v Belton (55 NY2d 49 [Belton III]) apply in New York absent an automobile, exigent circumstances, or a nexus between arrest and search? “Duties of law enforcement officials are extremely demanding in a free society * * * A policeman’s job is easy only in a police state.” (People v Spinelli, 35 NY2d 77, 82 [Wachtler, J.].)
A. PROCEDURAL HISTORY
Defendant, Deloss Dougall, was indicted on May 14, 1984, for criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]).
On June 18, 1984, defendant moved for an order, pursuant to CPL 710.20 and 710.60, suppressing statements and evidence (a pistol) obtained from him on or about May 3, 1984, contending the overlying arrest was not based on probable cause, negating any search and seizure thereunder.
Upon a motion to suppress, the People have'the initial burden of going forward to show the legality of the police *126 conduct, and, once met, the defendant has the residual burden, by a fair preponderance of the credible evidence to show the contrary. (People v Bouton, 50 NY2d 130; People v Di Stefano, 38 NY2d 640; People v Berrios, 28 NY2d 361.)
A pretrial Mapp suppression hearing (367 US 643) was conducted before this court on August 16,17, 20 and 21,1984. The People called two witnesses: Police Officers Robert Masci and Gary Olmstead, and rested. The defense then rested without calling any witnesses or introducing any other evidence.
B. FINDINGS OF FACT
The court makes the following findings of fact. On May 3, 1984, at approximately 12:15 p.m., Police Officers Robert Masci, Peter Guardino and Gary Olmstead were stationed in plain clothes on the West 40th Street side of Bryant Park between Fifth Avenue and Avenue of the Americas, in New York County. The police officers, standing outside the south side of Bryant Park, observed defendant standing within said park, approximately 100 feet away, remove a small manila envelope from his right shoulder bag and hand it to two males in exchange for a sum of United States currency. These men then went to a nearby Bryant Park bench and began to roll what appeared to be a marihuana cigarette using the contents of said manila envelope. Approximately two minutes later, defendant was approached by a third male who also gave what appeared to be a sum of United States currency to defendant in exchange for a small manila envelope which defendant had removed from said right shoulder bag. This third male thereafter exited Bryant Park whereupon he was stopped and issued a summons by Police Officer (P.O.) Olmstead who recovered said manila envelope. While P.O. Olmstead was issuing the summons, P.O. Masci went to and entered the 42nd Street or north side of Bryant Park, and without drawing his service revolver, approached defendant. After this approach, a scuffle ensued, whereby defendant’s shoulder bag fell and then defendant was knocked to the ground. Thereafter, P.O. Masci first handcuffed defendant, then picked up defendant’s shoulder bag and was joined by P.O. Guardino who escorted defendant out of Bryant Park. Said shoulder bag had an adjustable strap, a “Big Apple” plaque and three zippered compartments. As they were walking out of the park, P.O. Masci, without first obtaining a search warrant, opened one large zippered compartment (9 inches by 13 inches) on said shoulder bag, looked inside and observed what appeared to be marihuana (in both metal and plastic bags), then opened a second smaller zippered compartment, saw papers within, and alongside the *127 papers, noticed and felt the outline of, and then saw, a small black revolver. The latter two zippered compartments were approximately 8 by 10 inches. When he searched the shoulder bag, P.O. Masci was seeking evidence of marihuana and did not expect to find a weapon therein. Thereafter, defendant was taken to a police substation on 43rd Street near Broadway where the officers called for a car to transport defendant to the precinct station.
c. parties’ contentions
The People contend that P.O. Masci had probable cause to arrest and search defendant’s shoulder bag and seize its contents herein. The People further submit that a police officer may make a warrantless arrest if he has reasonable cause to believe that a person has committed a crime in his presence. (CPL 140.10; People v De Bour, 40 NY2d 210, 223.) Incidental to such lawful arrest, the police officer may contemporaneously search the suspect and seize any and all possessions. (Chimel v California, 395 US 752.) The People do not claim subject warrantless search to be part of an administrative inventory search but, rather, part of an investigative search.
In opposition, the defense contends the police lacked probable cause to arrest, and thus had no legal or State constitutional basis to search defendant’s shoulder bag or seize its contents, especially in the absence of a warrant, or exigent circumstances (i.e., threat to the police officer’s safety or a need to preserve evidence). (People v De Santis, 46 NY2d 82, 88-89, cert den 443 US 912; People v Smith, 59 NY2d 454.)
D. ISSUE
At issue in the present case is the legal and New York State constitutional (art I, § 12) validity of a Belton III warrantless search of personalty, absent an automobile, within the defendant’s reach (grab area) at the time of the arrest, when the search is made contemporaneously with the arrest but after the suspect and his property are in custody en route to the police station, and there is no threat to the officer’s safety or to the security of the evidence, which has no nexus to the arrest.
E. APPLICABLE LAW
The court initially notes that the People do not claim recovery of subject pistol as part of an inventory search but rather as part of an investigative search. This postarrest and prestation house warrantless search of a closed zippered compartment was not part of a reasonable administrative inventory search for a dan *128 gerous article to protect the police and public or to eliminate false claims for allegedly “lost” items. (See Illinois v LaFayette, 462 US 640; People v Gonzalez, 62 NY2d 386; People v Roman, 53 NY2d 39, and authorities cited therein.)
In People v Belton (55 NY2d 49, supra, on remand from New York v Belton, 453 US 454 [Belton II]), which sustained as not violative of the Fourth Amendment of the United States Constitution, a contemporaneous automobile warrantless search of any container within the “immediate control” of the suspect at the time of a custodial arrest, the Court of Appeals upheld such a search under section 12 of article I of the New York State Constitution. In Belton III (supra), a State trooper stopped a speeding car, smelled marihuana and saw a suspicious envelope on the car floor. The occupants were ordered out of the car, the envelope upon inspection was found to contain marihuana, and then the occupants were arrested. Thereafter, the trooper entered the vehicle and found cocaine inside the closed and zippered pocket of defendant’s jacket lying on the back seat. Suppression of the cocaine was denied and the contemporaneous grab area search doctrine was upheld when it applies to an automobile. In Belton III, the New York Court of Appeals recognized the inherent mobility and diminished expectation of privacy associated with automobiles; a warrantless search for a reasonable time and to a reasonable extent of the vehicle and a closed container in the passenger compartment was limited to situations where the circumstances surrounding the arrest indicate “that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or means of escape thwarted” (Belton III, supra, p 55).
Thus, Belton III (supra), for the first time now recognized in New York the “automobile exception” to the search warrant requirement of the New York State Constitution (art I, § 12), previously recognized by the United States Supreme Court under the Fourth Amendment to the United States Constitution. (See Carroll v United States, 267 US 132; Arkansas v Sanders, 442 US 753.) Probable cause for arrests and searches of motor vehicles is extended to the opening of locked containers if there is a nexus between the arrest and search. (See United States v Ross, 456 US 798 [paper bag in auto trunk]; People v Langen, 60 NY2d 170 [locked suitcase behind seat in passenger compartment]; People v Ellis, 62 NY2d 393 [locked glove compartment].)
The Belton III reasoning was subsequently used in several recent cases which did not involve the search of an automobile. (See People v Johnson, 59 NY2d 1014 [shoulder bag two feet *129 from defendant, suppression denied]; People v Smith, 59 NY2d 454 [closed briefcase held by subway fare-beater, suppression denied]; People v Gokey, 60 NY2d 309 [duffel bag between defendant’s feet, suppression granted].)
In People v Johnson (supra), the police, in responding to a radio call of a man with a gun, were directed to a rooming house apartment by the- superintendent who said someone tried to shoot him. Upon entering the apartment, the police officers arrested and frisked defendant, and then, before handcuffing defendant, searched the shoulder bag (defendant identified as his own) lying about two feet away from defendant on a bed. The search was sustained since the police reasonably believed defendant had a gun and was dangerous.
In People v Smith (supra), a subway fare-beater wearing a bulletproof vest, but denying same, was arrested and handcuffed while holding a closed briefcase. The immediately subsequent warrantless search of defendant’s briefcase by the police was justified upon the grounds that the search was close in time to the arrest and the defendant was still holding in his hand the closed briefcase of sufficient size to contain a weapon and which contents were readily accessible. Moreover, defendant.had just committed a crime. While not in and of itself suggestive of a weapon, defendant’s wearing, enhanced by his denial, of the bulletproof vest provided reason to believe defendant may have been armed, and the conduct of said search was reasonable despite the fact defendant was being handcuffed by one police officer since the other officer “simultaneously” conducted said search. (People v Smith, supra, p 459.) The court (Meyer, J.) citing People v De Santis (46 NY2d 82, 88-89, supra), held that the exigent circumstances which will justify a warrantless search incident to an arrest require compelling reasons, such as the search for “weapons or evidence that otherwise might be secreted or destroyed” (People v Smith, supra, p 458).
The Court of Appeals subsequently (per Cooke, Ch. J.) in People v Gokey (supra) refined and confirmed its position in People v Smith (supra), by refusing under the New York State Constitution to uphold the warrantless search incident to arrest of defendant where there were no exigent circumstances, inasmuch as the police did not immediately suspect that defendant was armed nor fear for their safety, and the search was not necessary to preserve any evidence. At the time of the search, defendant’s hands were handcuffed, there were present five police officers, and the reaction of a police dog trained to detect marihuana indicated the presence of marihuana in defendant’s *130 duffel bag which lay between his legs during the search. (People v Gokey, supra, p 313.)
In sum, Belton II (453 US 454, supra) ratified the grab area search so long as it is contemporaneous with the custodial arrest, but the Court of Appeals in Belton III (55 NY2d 49, supra), limited such ratification to the search of an automobile grab area in the presence of exigent circumstances such as a reasonable belief that the car may contain a weapon or contraband evidence related to the crime for which defendant was arrested. The cases following Belton III but not involving an automobile search, to wit, People v Johnson (59 NY2d 1014, supra), People v Smith (59 NY2d 454, supra), and People v Gokey (60 NY2d 309, supra), continued to use the exigent circumstances factors to evaluate the grab area searches, upholding the search (People v Johnson, supra; People v Smith, supra) where the totality of the circumstances indicated the presence of a weapon and thus danger to the police, and not upholding the search (People v Gokey, supra) where the totality of the circumstances indicated defendant was handcuffed prior to the search and there was no reasonable basis or belief for the police to fear for their safety or for the security or preservation of the evidence. Note, the requirement for exigent circumstances in the absence of consent has been more strictly applied to both warrantless arrests in defendant’s home and incidental searches therein, under both the Federal and State Constitutions, since there is a clear expectation of privacy which defendant has no burden to show. (See People v Levan, 62 NY2d 139, 144; Payton v New York, 445 US 573.)
Recently, the United States Supreme Court (6 to 3), reversing a divided New York Court of Appeals (4 to 3) in People v Quarles (58 NY2d 664), created a “public safety” exception to the Miranda warnings requirement. (New York v Quarles, 467 US_, 52 USLW 4790.) The majority in New York v Quarles held that exigent circumstances reasonably posing a risk to the public safety (as distinct from the police officer’s safety as in People v Chestnut, 51 NY2d 14) justified the police officer’s query, prior to giving Miranda warnings to defendant already in custody, and did not suppress defendant’s response as to the location of the gun which defendant had placed out of sight in a carton while being chased through a supermarket by the police officer.
F. CONCLUSIONS OF FACT AND LAW
Under the guidelines detailed in Belton III (supra), and People v Gokey (supra), and under the totality of the circum *131 stances, the defendant has sustained his burden to show by a fair preponderance of the credible evidence that the police conduct was unjustified.
In the present case, defendant was arrested, immobilized by handcuffs, and surrounded by two police officers (Masci and Guardino) who were escorting defendant out of Bryant Park at the time P.O. Masci conducted the warrantless search of defendant’s shoulder bag. This grab area search of a bag within defendant’s immediate control, although generally contemporaneous with the arrest, was not supported by exigent circumstances. Since defendant was immobilized by handcuffs, (1) at the time of the search of said shoulder bag, in possession of P.O. Masci, there was no reasonable possibility that defendant would have been able to quickly reach and destroy evidence therein (People v Gokey, supra, pp 313-314); furthermore, (2) P.O. Masci did not reasonably expect to find a weapon for his interest focused only upon marihuana in the bag; and (3) there was no apparent justification for Police Officers Masci and Guardino to fear for their safety at the time of subject search. (People v Johnson, supra; People v Smith, supra.)
Thus, the police on May 3, 1984, just after the noon hour, should have obtained a search warrant by oral application communicated to the Judge by telephone or radio (CPL 690.36) before searching the bag or should have impounded the bag for the police property clerk and an inventory search at the station house or precinct (see Illinois v LaFayette, 462 US 640, supra, followed [5 to 2] in New York in People v Gonzalez, 62 NY2d 386, supra), and could have effected either course of action without danger of loss of evidence. Such may have been inconvenient and perhaps seemed to the police officers unduly burdensome, and there is little question that it would have been burdensome, but, “The warrant requirement has been a valued part of our constitutional law for decades * * * It is not an inconvenience to be somehow ‘weighed’ against the claims of police efficiency.” (Coolidge v New Hampshire, 403 US 443, 481 [Stewart, J.].) “Duties of law enforcement officials are extremely demanding in a free society. But that is as it should be. A policeman’s job is easy only in a police state.” (People v Spinelli, 35 NY2d 77, 82, supra [Wachtler, J.].)
Accordingly, for the foregoing reasons, defendant’s CPLR 710.20 and 710.60 motion to suppress is granted.