OPINION OF THE COURT
Leslie Crocker Snyder, J.
I. BACKGROUND
The defendant is charged with the class A misdemeanors of petit larceny and criminal possession of stolen property stemming from an alleged shoplifting incident at Gimbel’s Department Store on August 22,1984. He moved for an order suppressing physical evidence pursuant to CPL 710.20 (1). A hearing on that issue was conducted before this court on October 25 and 31, 1984. Store Detective Sara Garone was called by the People and was the sole witness to testify. The defense rested without calling any witnesses or introducing any evidence. From all of the credible evidence adduced, I find and conclude as follows:
*464 II. FINDINGS OF FACT
On August 22,1984, Store Detective Sara Garone was patrolling the fifth floor of Gimbel’s Department Store. She initially observed the defendant, who was carrying a shopping bag and wearing a knapsack on his back, in the linen department. She saw the defendant look from side to side and then place several packages of sheets and pillowcases in the shopping bag in a furtive manner. When the defendant left the shopping floor without paying for these items, he was approached by Ms. Garone and Special Police Officer Robert Ortiz who requested that he accompany them to the security office. The defendant complied with this request without protest. The shopping bag and knapsack were removed from the defendant upon arrival at the security office.
Once inside the security office, Store Detective Garone looked into the shopping bag and saw packages of sheets and pillowcases. Shortly after this the defendant’s knapsack was opened and more packages of linen were found. Ms. Garone testified that store policy required that all packages be searched for weapons.
III. CONCLUSIONS OF LAW ISSUES AND DISCUSSION
This relatively simple statement of facts, in all likelihood, mirrors hundreds of similar occurrences that take place in the major department stores of our city each week. However, this seemingly uncomplicated scenario raises several complex issues that have not been addressed directly in any reported decision.
A.
Initially I find that where, as here, a store detective is working with a special patrolman (SPO) (see, Administrative Code of City of New York § 434a-7.0), there is sufficient State action under the facts of this case to bring the operative effects of the 4th Amendment into play. (See, e.g., Burdeau v McDowell, 256 US 465 [1921]; People v Jones, 47 NY2d 528 [1979]; People v Ray, NYLJ, Jan. 20,1984, p 6, col 1 [App Term, 1st Dept 1984]; People v Horman, 22 NY2d 378 [1968]; People v Smith, 82 Misc 2d 204 [Crim Ct, NY County 1975].)
B.
The central issue raised by this motion is the legality of the search of the defendant’s shopping bag and knapsack. The search of each of these items will be discussed separately.
*465 1. Search of the Shopping Bag
The People argue that the search of the shopping bag falls within the plain view exception to the warrant requirement. New York appellate courts have adopted this exception (People v Etoll, 51 NY2d 840 [1980]).
The “search” of the shopping bag by Store Detective Garone was not in fact a search for 4th Amendment purposes. The officers here had probable cause to arrest the defendant and take him to the security office. Ms. Garone merely had to look inside the bag to see evidence of stolen property. The officer was in a position in which she was legally entitled to be.
The 4th Amendment was not designed to place blinders on law enforcement personnel to keep them from observing that which is before their eyes. The “search” of the shopping bag and the seizure of the items from the bag are legally permissible under the plain view doctrine. (Harris v United States, 390 US 234 [1968].)
2. Search of the Knapsack
The more troublesome issue involves the legality of the warrantless search of the defendant’s knapsack. The facts relating to the knapsack are meager. The officer never saw the defendant put anything inside the knapsack. The knapsack was merely a closed container worn on the defendant’s back in which stolen property could have been secreted. The defendant was permitted to retain possession of the knapsack until he arrived in the security office, several floors below the scene of the arrest.
These facts would be insufficient to establish probable cause had they been presented to a magistrate prior to the search of the knapsack in the hope of obtaining a warrant. Therefore, the officers could not have obtained a warrant to search the knapsack and, in fact, made no attempt to do so.
The search of the knapsack can only be upheld if the search can be established as a lawful search incident to a lawful arrest.[1] Having previously upheld the legality of the arrest, the court must focus on the issue of the legality of the search of a closed container (the knapsack) incident to a lawful arrest.
*466 In New York searches incident to arrest have been upheld only upon a showing of exigent circumstances. (People v Gokey, 60 NY2d 309 [1983].) Exigent circumstances have been limited to two situations: where the safety of the arresting officer or the general public is at stake (People v Smith, 59 NY2d 454 [1983]) and when the protection of evidence from destruction or concealment is necessary (People v De Santis, 46 NY2d 82 [1978], cert denied 443 US 912).
The requirement of exigent circumstances to justify a search incident to arrest distinguishes New York law from Federal law.
Under Federal law, the United States Supreme Court has upheld the search of a closed container as a lawful search incident to arrest. (New York v Belton, 453 US 454 [1981].)
The court reasoned that an arrest based on probable cause is a reasonable intrusion and therefore the search of a closed container needs no additional justification. Such searches would be valid even if the containers searched “could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested.” (New York v Belton, supra, at p 461.)
However, when Belton (supra) was reargued before the New York Court of Appeals (People v Belton, 55 NY2d 49 [1982]), the court refused to adopt the Supreme Court’s broad view of a search incident to arrest. In Belton (supra) and Smith (supra) the New York Court of Appeals fashioned a far more restrictive policy concerning searches incident to arrest.
Finally, in People v Gokey (supra, at p 311) the court held that “A duffel bag that is within the immediate control or ‘grabbable area’ of a suspect at the time of his arrest may not be subjected to a warrantless search incident to the arrest, unless the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag.”
This decision clearly holds that a search incident to arrest will be considered reasonable only if exigent circumstances existed at the time of the arrest. Exigent circumstances are defined as reasonable belief that the suspect may gain access to a weapon or be able to destroy evidence. (People v Gokey, supra; People v Smith, supra.)
Applying this body of law to the facts before me, I can find no exigent circumstances. The defendant retained possession of the knapsack until arriving at the security office. This fact shows that the officers had no fear for their safety or for the safety of the general public. The actions of the officers belie any claim of a *467 reasonable belief that the defendant was armed or in a position to destroy property.[2] This court is bound to suppress the evidence recovered from the defendant’s knapsack.
While this court is bound under the principles of stare decisis to apply the law as given by higher courts, it is not bound to do so without comment. Under the Gokey opinion (supra), the Court of Appeals has given greater protection to the property of a person arrested than it has given to the individual’s person. This court respectfully disagrees.
By adopting the exigency requirement, the court appears to have abandoned the concept that having made the ultimate seizure of the individual, any contemporary search of his property would be a de minimus intrusion. (People v De Santis, supra.) There is no difficulty finding earlier authority to emphasize the logic of the de minimus intrusion approach. (See, People v Perel, 34 NY2d 462 [1974]; People v Weintraub, 35 NY2d 351 [1974]; United States v Edwards, 415 US 800 [1974].)
To illustrate the illogical result dictated by Gokey (supra) see, People v Dougall (126 Misc 2d 125 [Sup Ct, NY. County, Ryp, J., 1984]). In Dougall, the court applied Gokey and suppressed the contents of a bag from which the officer had observed drugs being sold by the defendant.
It is this court’s hope that the Court of Appeals will reconsider the issue of search incident to arrest at its earliest opportunity and return to its former “de minimus” intrusion approach. Until such time, this court is bound to grant the suppression of the evidence recovered from the knapsack of a lawfully arrested suspect charged with shoplifting.
IV. COMMINGLING
The evidence adduced at the hearing made clear that the People will not be able to determine at trial if a particular piece of evidence was recovered from the shopping bag or the knapsack. The danger inherent in commingled evidence is the potential introduction of illegally seized and, therefore, tainted evidence. (Wong Sun v United States, 371 US 471 [1963].) The effect of such commingling has rarely been discussed and this court is *468 aware of only two reported New York cases: People v Cosby (104 AD2d 1000 [2d Dept]) and People v Youance (Crim Ct, NY County, docket No. 2N044312, decided May 18,1983, Crane, J.). In both of these cases, property which had been properly seized was commingled with property improperly seized. The courts suppressed all the property. In both cases the property had a unique nature. In the case before me the property consists of fungible goods.
Since the property is fungible, the defendant cannot be prejudiced by the fact that a particular piece of property may or may not have been legally seized. The remaining possible danger to the defendant is that he will be prejudiced by the volume of property recovered and then commingled. Any prejudice resulting from the commingling in this case can be eliminated by restricting the People to the introduction of a single package of sheets and a single package of pillowcases. In this way the rights of the defendant and the People will be protected. To suppress all items seized, in view of their fungible nature, would lead to an unnecessary and illogical result, further compounding the illogic dictated by applying the Gokey decision (supra).
In conclusion, I find that the search of the shopping bag was lawful while the search of the knapsack violated the defendant’s New York State constitutional rights.
The motion to suppress is granted to the extent of limiting the quantity of evidence the People may introduce at trial as indicated.

. In their posthearing memorandum of law, the People argue that the search of the knapsack should be upheld either as a valid inventory search or under the theory of inevitable discovery. While an inventory search might have been proper if performed as a routine procedure by the store, the record is devoid of any such evidence. Therefore, there is no basis for the application of the inevitable discovery doctrine. (See, People v Gonzalez, 62 NY2d 386 [1984]; People v Zollo, 114 Misc 2d 1032 [County Ct, Nassau County, Baker, J., 1982]; People v Parker, NYLJ, Apr. 29, 1983, p 15, col 6 [Sup Ct, Kings County, Deeley, J.].)

. The store detective testified that there is a store policy to search all containers for weapons. The officers permitted the defendant to retain physical possession of the knapsack until after arriving at the security office. The record is devoid of any facts which could sustain a reasonable belief that the defendant was armed or in a position to destroy evidence. The store policy, without additional facts, is insufficient to establish the required exigent circumstances to justify the search of the knapsack under current New York State law.