46 N.Y.2d 82 (1978)
The People of the State of New York, Respondent,
v.
James L. De Santis, Appellant.
Court of Appeals of the State of New York.
Argued October 17, 1978.
Decided December 7, 1978.
William B. Mahoney for appellant.
Edward C. Cosgrove, District Attorney (Judith Blake Manzella of counsel), for respondent.
Chief Judge BREITEL and Judges JASEN and GABRIELLI concur with Judge COOKE; Judge WACHTLER dissents and votes to reverse in a separate opinion in which Judges JONES and FUCHSBERG concur.
*85 COOKE, J.
Defendant appeals from his conviction, after a jury trial, of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18, subd 3) and criminal possession of a controlled substance in the fifth degree (Penal Law, § 220.09, subd 10). Among several grounds urged for reversal, it is argued that the determination of the Supreme Court in United States v Chadwick (433 US 1 [June 21, 1977]) renders the actions of the police unreasonable and mandates that the fruits of their warrantless search be suppressed. We hold that the conviction should be affirmed, as the scope, intensity and duration of the search and seizure incident to defendant's lawful arrest did not exceed constitutional limits.
*86 On December 10, 1974, defendant and his traveling companion approached a United Airlines ticket agent in San Diego, California, to purchase tickets for a flight to Buffalo by way of Chicago. They paid for their tickets by peeling one hundred dollar bills from what, according to the agent, appeared to be a wad of bills of large denomination. Throughout the entire transaction, defendant and his fellow traveler exhibited a degree of anxiety atypical of persons engaged in such a routine occurrence. His suspicions aroused by this curious conduct, and in keeping with his "responsibility to the company", the agent opened the two unlocked suitcases which the pair had checked for the flight. While subjecting the contents of the baggage to a cursory examination, the agent discovered two large plastic bags containing what appeared to be marihuana.
Upon making this discovery, the agent relayed this information to Federal drug enforcement authorities in San Diego, furnishing them with the suspects' names and features, a description of their luggage, their flight number and destination and the baggage claim ticket number for the suitcase containing the contraband. This information, in turn, was communicated to Federal authorities in Buffalo who notified the Erie County Sheriff's Department of the then impending arrest.
Upon arrival of the flight in Buffalo, Federal Agent Johnson observed two individuals matching the description supplied by San Diego authorities disembark from the plane. He followed them to the baggage claim area where he observed defendant pick up the suitcase bearing the claim number furnished by the authorities in San Diego. Addressing the defendant, Johnson said, "Excuse me, I believe you have my suitcase." When defendant produced the claim check matching the number of the ticket on the bag, Johnson apologized and defendant walked away with the suitcase. Defendant was then arrested by an Erie County Deputy Sheriff.
Both defendant and his suitcase were at once taken from the baggage claim area to a police substation located within the airport. Once there, defendant was immediately searched and the suitcase opened, revealing two large plastic bags of marihuana and a brown paper bag containing smaller bags of amphetamine pills.
Defendant raises a number of objections to the events leading up to his arrest, all of which are without merit for the *87 reasons stated in the opinion of Mr. Justice MICHAEL F. DILLON at the Appellate Division (59 AD2d 257, 258-259). All that remains for our determination is the claim that the warrantless search of the suitcase exceeded constitutional limits under the rule of United States v Chadwick (433 US 1, supra).
It merits little discussion but to note that, except in a few specified categorical instances, the Fourth Amendment prohibits all searches and seizures without the prior approval of a disinterested Magistrate (Coolidge v New Hampshire, 403 US 443, 455). One of these exceptions, of course, allows for a warrantless search of a person and the objects within his access incident to his lawful arrest (Chimel v California, 395 US 752, 762-763; Marron v United States, 275 US 192, 199). A warrantless search incident to a lawful arrest is most often justified as necessary to protect the safety of the arresting officer, to deprive the arrestee of any potential means of escape or of the ability to destroy the evidence of a crime (Chimel v California, supra, at p 756; People v Evans, 43 N.Y.2d 160, 165; People v Erwin, 42 N.Y.2d 1064, 1065; People v Darden, 34 N.Y.2d 177, 180). But the practical impetus for allowing these searches lies in the fact that the arrest itself constitutes such a major intrusion into the privacy of the individual that the encroachment caused by a contemporaneous search of the arrestee and his possessions at hand is in reality de minimis (People v Perel, 34 N.Y.2d 462, 467-468; see, also, People v Weintraub, 35 N.Y.2d 351, 354). Thus, when viewed in the context of reasonableness, the cornerstone in any Fourth Amendment inquiry (Katz v United States, 389 US 347), the lawful custodial arrest being reasonable (see United States v Watson, 423 US 411), the search of the person and the area within his immediate control, in this instance defendant's suitcase, does not involve any greater reduction in the arrestee's expectation of privacy than that caused by the arrest itself.
United States v Chadwick (433 US 1, supra) does not compel a different result. In that case, railroad officials in San Diego observed two individuals loading a heavy footlocker on a train bound for Boston. Their suspicions were aroused when they noticed it was leaking talcum powder, a substance often used to mask the odor of marihuana. These suspicions were reported to Federal agents who relayed the information to their counterparts in Boston. When the train arrived in Boston, the *88 two individuals who had loaded the footlocker in San Diego were on hand and lifted it into the trunk of Chadwick's waiting car. At that point, Federal agents arrested all three and seized the footlocker. Ninety minutes later, after the footlocker had been transported to the Federal building and separated from the arrestees, the agents opened the trunk and seized a large quantity of marihuana.
Rejecting the contention of the Government that a double-locked footlocker has the same inherently mobile characteristics which support warrantless searches of automobiles (see Chambers v Maroney, 399 US 42; Cady v Dombrowski, 413 US 433), the court refused to extend the automobile exception to all personalty located outside the home (433 US, at p 13, supra). The alternative ground upon which the Government sought to legitimize the search was also repudiated, the court holding that a search could not be justified as incident to an arrest "if the `search is remote in time or place from the arrest'" (id., at p 15, quoting Preston v United States, 376 US 364, 367). Once the property is within the exclusive authority of the police and the arrestee's association with the property is at an end, there remains no predicate to justify the warrantless search.
As Chadwick makes plain, a search or seizure without a warrant has always been considered to be a strictly circumscribed right (see, e.g., People v Marsh, 20 N.Y.2d 98, 101-102). But it has always been, and continues to be, the rule that a warrantless search, not significantly divorced in time or place from the arrest, is lawful.
In this case, at the time of his arrest, the police could have conducted a full-blown search of defendant and the suitcase within his immediate control in the baggage claim area (People v Darden, 34 N.Y.2d 177, supra; Draper v United States, 358 US 307). But the fact that this did not occur and the search took place just as soon as defendant was in a place where the search could be performed without endangering innocent bystanders and sparing defendant public embarrassment is of no constitutional significance (Abel v United States, 362 US 217). To be sure, the arrest of defendant, standing alone, did not destroy whatever privacy interests he had in the contents of the suitcase. It did, however  at least for a reasonable time and to a reasonable extent  subsume those interests into the legitimate governmental interest in discovering *89 weapons, thwarting access to means of escape and preventing the destruction or secretion of evidence.
The particular result obtained in Chadwick is not determinative of this appeal. This becomes apparent from a mere review of the circumstances surrounding the two searches. In Chadwick, the object seized was a bulky, double-locked footlocker, which obviously could be neither quickly opened nor rapidly removed by the defendant or an accomplice. More significantly, the search itself was not undertaken in close proximity to the time and place of the arrest and seizure. Rather, the footlocker was opened an hour and a half after the arrest, and only after it had been removed to police headquarters some distance away. The defendants, furthermore, had been securely confined and were not present when the footlocker was opened. Indeed, the only people present were the police. Under these circumstances, there was no reason whatsoever which would justify a delay of the search until a search warrant could be obtained. In the present case, in marked contrast, the suitcase was opened, not after the police had gained exclusive control of it, not away from the securely incarcerated defendant as in Chadwick, but rather directly upon defendant's arrest in a private airport room with no danger to the public and in the presence of defendant and his traveling companion. Thus, the police had a strong legitimate interest in immediately opening the suitcase and securing its contents. In short, the search of the unlocked suitcase, having a close nexus to the time and place of the arrest, was reasonable under the circumstances.
Accordingly, the order of the Appellate Division should be affirmed.
WACHTLER, J. (dissenting).
I dissent on the ground that the illegal search and seizure condemned in United States v Chadwick (433 US 1) occurred under facts indistinguishable from those here presented. Indeed the challenged search and seizure is even less supportable in this case. Whereas in Chadwick there was no inspection of the trunk prior to the seizure, here the ticket agent in San Diego examined the contents of the suitcases before informing the authorities that defendant was transporting contraband drugs. Hence the possibility that the suitcases contained explosives or other instrumentalities posing an immediate danger was dispelled.
Order affirmed.