■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARRETT MEACHEM, Appellant.—Judgment, Supreme Court, New York County, (Jeffrey M. Atlas, J.), rendered July 13, 1983, convicting defendant upon his plea of guilty, of attempted criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of imprisonment of from 1½ to 3 years, unanimously reversed, on the law, the motion to suppress granted, and the indictment dismissed.

The only issue on appeal is the legality of the police officers'

seizure of the weapon in question. The following account of the incident leading to the seizure is based on the People's evidence at the hearing, which the suppression court credited.

At approximately 12:30 A.M., on the morning of September 12, 1982, Police Officers Hefner, Gigget and Carter, in civilian clothes, were on patrol, in an unmarked car in the vicinity of St. Nicholas Avenue and 161st Street, an area known for its high incidence of narcotics offenses and shootings. As the officers proceeded north on St. Nicholas Avenue, they noticed defendant and his cousin, Willard Turner, walking in the opposite direction. The two appeared to be "clowning around" and pushing each other. Defendant was carrying a soft-sided athletic bag.

Officer Hefner, the driver, made a U-turn and drove behind the youths. Defendant looked in the direction of the officers, and then shifted the athletic bag from his right shoulder, which was nearest the officers, to his left hand, away from them. At this point, Officer Hefner testified, he began to suspect that the bag contained some sort of contraband, possibly a gun. He drove across the street to where defendant and Turner were walking in order to get a closer view. As he approached, he noticed that the bag looked heavy and was sagging at the bottom.

Still seated in the car, Hefner identified himself and asked what was in the bag, to which defendant responded, "I don't know." When the officer inquired as to whom the bag belonged defendant gave the same response. Officer Hefner then stepped from the car, approached defendant, touched the bottom of the bag, and felt what he believed was the trigger guard of a weapon. He took the bag, opened it, and discovered a sawed-off shotgun. He then placed defendant under arrest.

Defendant's motion to suppress was denied. The court reasoned that Officer Hefner had a reasonable suspicion that a weapon was in the bag and that he was in a dangerous situation. The court took note of the late hour, the shifting of the bag, the sagging at the bottom of the bag, defendant's answers to the officer's questions, and the fact that guns were frequently used in the area.

We cannot agree that the officer's action in touching the bag was reasonable. Even assuming that Officer Hefner was justified in approaching and questioning defendant, pursuant to his common-law right to inquire (see, People v De Bour, 40 NY2d 210), the subsequent frisking of the bag cannot be upheld. Neither the initial predicate nor ensuing events pro-

vided a reasonable suspicion that defendant was committing, had committed or was about to commit a crime, so as to justify the frisk and the concomitant forcible detention of defendant. Not only did Officer Hefner fail to observe any criminal activity prior to the frisk but defendant's conduct, such as it was, was susceptible of innocent interpretation. *(See, Brown v Texas,* 443 US 47; *People v Carrasquillo,* 54 NY2d 248, 252.)

Officer Hefner had observed only that defendant and his cousin were pushing each other and "clowning around" late at night, conduct certainly equivocal at best. Defendant's shift of a bag which appeared to contain something heavy, at the same time that he looked in Officer Hefner's direction, in the absence of other suspicious conduct, was innocuous in view of the officer's observation that the bag looked heavy, and does not constitute "objective evidence evincing criminal activity" *(People v Cantor,* 36 NY2d 106, 113). Significantly, defendant and his cousin did not quicken their pace or change direction. That the bag looked heavy provided no additional reason to suspect defendant of criminal activity.

Although shootings were known to occur in the area, the officers did not have any reason to suspect that defendant was armed or that any shooting, or for that matter, any crime, had taken place or was about to take place. The mere presence of an individual in a high-crime area cannot transform his otherwise innocuous possession of a sagging athletic bag into conduct which provides a reasonable suspicion that the bag contains a weapon or contraband.

Nor can defendant's answers to the officer's two questions justify the search. Although they may have aroused the officer's curiosity, they did not necessarily indicate criminal activity. If his conduct were otherwise suspicious the answers might justifiably provoke a search of the bag, but, as in the case of *People v McNatt* (65 NY2d 1046), even a suspect's obvious falsehoods cannot justify further police intrusion without some other conduct which provides probable cause or a reasonable fear that the officer is in danger of physical injury. Defendant did not consent to the search of his bag. "Absent a showing of the existence of one of ' "a few specifically established and well-delineated exceptions" ' * * * to the constitutional proscription on warrantless searches, [an officer's] action, undertaken without probable cause, will not be upheld." *(People v McNatt, supra,* p 1048, citing *Schneckloth v Busta-monte,* 412 US 218, 219; *Katz v United States,* 389 US 347, 357; *People v De Santis,* 46 NY2d 82, 87, *cert denied* 443 US

912.) Since the search of the bag and the concomitant restraint of defendant were unlawful, the gun must be suppressed. Concur—Kupferman, J. P., Sullivan, Asch and Milonas, JJ.