■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PAUL WYLIE, Respondent. [666 NYS2d 1] —Order, Supreme Court, New York County (Ira Beal, J.), entered June 19, 1996, which, to the extent appealed from, granted defendant's motion to suppress physical evidence recovered from him at the time of his arrest, unanimously reversed, on the law, the motion denied and the matter remanded for further proceedings.

On February 20, 1996, Detective John Guariglia was assigned to investigate a robbery complaint filed by Christopher Bonnemere, an employee of a Love Store located at 85th Street and Third Avenue in Manhattan. Bonnemere told the police that on February 19th, he was bringing a bag containing $7,000 of the store proceeds to the Republic National Bank when a man attacked him in the bank lobby and stole the bag of money. Bonnemere described the thief as a six-foot tall black man with a goatee, weighing between 230 and 250 pounds, and wearing a black or tan jacket. Bonnemere also told Guariglia that the money was packaged in a brown bag, which was placed in a plastic bag with a Love Store logo, which in turn was

inside a "Gap" store plastic bag. The robbery was not witnessed by anyone at the bank.

Upon further questioning of Bonnemere, Guariglia began to doubt that a robbery had occurred. Bonnemere exhibited no injuries despite his claim he was punched in the face, and Guariglia discovered he had given varying descriptions of the alleged perpetrator to other police officers. Eventually, Bonnemere admitted that it was a "phony robbery," which he had set up with a guy named "Paul" who worked at a nearby jewelry store on 86th Street. Bonnemere described Paul to Guariglia as six feet, three inches, with a goatee and gold tooth, weighing between 230 and 250 pounds, and wearing a tan overcoat or jacket. The police went to the jewelry store, where they learned that a man fitting that description was employed there named "Paul Wylie." The police obtained defendant's home address in upper Manhattan, and further learned that defendant had borrowed a co-employee's 1970's Cadillac Seville earlier that day.

At 6:00 P.M. on February 20th, Guariglia and Detective Schmittgal drove to defendant's home and parked 50 to 100 feet from the entrance. After noticing a 1970's Cadillac Seville parked near the building, they observed a man meeting defendant's description come out of the building and walk toward them. Guariglia got out of his car with his gun holstered, approached defendant and asked him if he was "Paul Wylie." When the man responded that he was, Guariglia told him to put his hands behind his back and placed him under arrest. Wylie was handcuffed and a search of his right coat jacket revealed a plastic bag with the Love Store logo. Inside, Guariglia found a brown paper bag containing two bundles of money totalling $3,000.

After a hearing on the motion to suppress, the IAS Court granted suppression of the money. Although the court determined that defendant's arrest was supported by probable cause, it held that "once the defendant was placed in handcuffs, the police had a duty to secure a search warrant in order to search the bag, which was a closed container for Fourth Amendment purposes." The court, citing *People v Gokey* (60 NY2d 309), stated that the warrantless search was illegal because the officers' actions did not evince a fear that the bag contained a weapon or that the evidence inside the bag might be destroyed.

"Under the State Constitution, an individual's right of privacy in his or her effects dictates that a warrantless search incident to arrest be deemed unreasonable unless justified by the presence of exigent circumstances" (*People v Gokey, supra,*

at 312). The Court of Appeals has recognized two interests justifying a warrantless search incident to an arrest: "the safety of the public and the arresting officer; and the protection of evidence from destruction or concealment (see *People v Smith*, 59 NY2d 454, 458, *supra; People v Belton*, 55 NY2d 49, 52-53)." (*People v Gokey, supra,* at 312.)

The People argue on appeal that the holdings in *People v Smith* (*supra*) and *People v Gokey* (*supra*) are inapplicable because there was no evidence at the suppression hearing that the bags were "in any way closed or otherwise sealed to indicate some privacy interest on the part of the defendant." The People's reading of the record is correct, as the only witness at the hearing, Guariglia, was never asked about the condition of the bag. However, the suppression court made the finding that the bag was a closed container, and the People never moved to reopen the hearing to establish otherwise. It is the People's burden in the first instance to establish justification for a warrantless search, which is presumptively unreasonable. Thus, the People cannot now argue that the evidence failed to establish that this was a closed container (*see, People v Pettinato*, 69 NY2d 653, 654-655; *People v Jenkins*, 119 AD2d 697; *see also, People v Knapp*, 52 NY2d 689, 694; *People v Calhoun*, 49 NY2d 398, 402).

Nonetheless, we believe that suppression is unwarranted. A recognized exception to the Fourth Amendment's warrant requirement is a search incident to a lawful arrest (*People v Belton*, 55 NY2d 49, 52, *supra; United States v Chadwick*, 433 US 1, 14; *Chimel v California*, 395 US 752). Under this exception, the police are allowed to search the person of individuals lawfully arrested, or the area within their immediate control, if the search "closely follows [the] arrest" (*People v Belton, supra,* at 53). "It is grounded in protecting the safety of the arresting officer by permitting him to search for and seize weapons when there is reason to fear for his safety and in preventing the person arrested from destroying evidence of criminal involvement by permitting the arresting officer to search for and seize such evidence" (*supra,* at 52-53). Another consideration underlying this exception is that since the arrest itself constitutes such a major intrusion on an individual's privacy, "the encroachment caused by a contemporaneous search of the arrestee and his possessions at hand is in reality *de minimis*" (*People v De Santis*, 46 NY2d 82, 87, *cert denied* 443 US 912).

The search in this case is materially indistinguishable from that approved by the Court of Appeals in *People v De Santis* (*supra*). In *De Santis*, Federal drug enforcement agents in Buf-

falo received first-hand information that defendant and another were carrying marijuana in their luggage on a flight from San Diego to Buffalo. When the two men arrived in Buffalo and claimed the luggage with the proper claim check, they were arrested. Defendant and his suitcase were immediately taken to a police station within the airport, where defendant was searched and the suitcase opened, revealing two large bags of marijuana.

The Court of Appeals upheld the actions of the agents as a search incident to a lawful arrest. While recognizing that warrantless searches are "a strictly circumscribed right," and that defendant did retain a privacy interest in the contents of the suitcase, the Court held those privacy rights must, for a limited time, give way to "the legitimate governmental interest in discovering weapons, thwarting access to means of escape and preventing the destruction or secretion of evidence" (*supra*, at 88-89). The Court distinguished the Supreme Court's holding in *United States v Chadwick* (*supra*), where the search involved a bulky double-locked footlocker that could not be easily opened, the search took place an hour and a half after the arrest at police headquarters some distance away and the defendants had been securely confined and were not present during the search. In contrast, the search in *De Santis* was accomplished in close proximity to the time and place of the arrest, and in the presence of the defendant. In the present case, it is undeniable that the search of bags occurred immediately upon, and at the same location as, the arrest.

Relying on *People v Gokey* (*supra*), defendant argues, and the suppression court agreed, that no exigency existed to justify the search because defendant was handcuffed prior to the time the search was conducted. It is true that once the police obtain "exclusive control" over an arrestee's property, and there is no longer the possibility of gaining access to the property to seize a weapon or destroy evidence, the search is no longer incident to the arrest (*People v De Santis, supra*, at 89; *United States v Chadwick, supra*, at 15). While some of our own decisions have suggested that handcuffing, by itself, will negate any claim of exigent circumstances (*compare, People v Rosado*, 214 AD2d 375, *lv denied* 86 NY2d 740, *with People v Bilbatua*, 208 AD2d 404, *lv denied* 84 NY2d 1029), the governing standard is whether the property has been reduced to the "exclusive control" of the police (*People v De Santis, supra*, at 89; *United States v Chadwick, supra*, at 15).

The evidence at the suppression hearing did not meet the test for exclusive control, as defined by both the Supreme Court

and the Court of Appeals. In *Chadwick*, as noted, the footlocker was searched well after the arrest, in police headquarters, outside defendant's presence. In *Gokey*, the search occurred after defendant's hands were handcuffed behind his back *and* he was surrounded by five police officers and a police dog. The searching officers in *Gokey* also permitted defendant to keep the bag between his legs while being frisked which, in the Court's view, belied any notion of exigent circumstances.*

Conversely, in *People v Smith* (59 NY2d 454, *supra*), the Court upheld a warrantless search that occurred almost simultaneously with the handcuffing of the defendant in that case. Addressing the timing of the search, the *Smith* Court stated: "Whether in fact defendant could have had access to the briefcase at the moment it was being searched is irrelevant. He clearly could have had when arrested and neither the distance from nor the time elapsed since the arrest was sufficient to dissipate the reasonableness of conducting a search of the briefcase without a warrant." (*Supra,* at 459.)

Like *Smith*, the search in the present case occurred immediately after the defendant was arrested and handcuffed. Indeed, the search was conducted right there on the street, a short distance from the defendant. Defendant easily could have reached for a weapon or attempted to rid himself of the money during the arrest itself, and the momentary delay in actually handcuffing defendant does not alter this result (*People v Smith, supra*). Moreover, a determined arrestee may use means other than his hands—such as kicking or shoving the arresting officer—to disrupt the arrest process in order to gain a weapon or destroy evidence. Such actions are a realistic possibility when the search occurs within close proximity to the arrest, as was the case here. In any event, the factual scenario in this case is a far cry from the police-controlled arrest scenes in *Chadwick* and *Gokey*, where no interpretation of the evidence would permit a finding of exigent circumstances.

The reasonableness of this search is enhanced by the facts that the Love Store bag was itself evidence of the crime for which defendant was arrested, and that the police had probable cause to believe that the bag contained further evidence of the crime, to wit, the proceeds of the theft. Bonnemere had told the police that the stolen money was packaged in three bags, one of which was a Love Store bag, and was in defendant's possession. Not coincidentally, when the police arrested defendant

---

* The prosecution also conceded in *Gokey* that the searching officers had no fear that the defendant was armed at the time of the search. No such concession was made here by Guariglia at the hearing, or by the prosecutor.

a few hours later, he was found in possession of a bag emblazoned with the Love Store logo on it. The irresistable conclusion drawn by Guariglia, as would have been drawn by anyone, was that defendant possessed the proceeds of the crime. Because this search was conducted in close proximity to the arrest, and the potential for the destruction of evidence still remained, the search was a proper search incident to a lawful arrest. Accordingly, we reverse the granting of the motion to suppress and remand for further proceedings on the indictment. Concur—Milonas, J. P., Rubin, Mazzarelli and Andrias, JJ.