OPINION OF THE COURT
Lucy Billings, J.
I have reviewed the transcript and the recommended findings of fact and conclusions of law from the pretrial suppression hearing held February 23, 1998, in Part AP8, before Judicial Hearing Officer Morris Goldman. I adopt his findings *859 of fact and conclusions of law to the extent set forth below and modify them for the reasons articulated.
FINDINGS OF FACT
Defendant is charged with violating Penal Law § 220.03, criminal possession of a controlled substance in the seventh degree. The court granted defendant’s motion for a hearing pursuant to Dunaway v New York (442 US 200 [1979]) and Mapp v Ohio (367 US 643 [1961]), to determine whether to suppress a crack pipe and a glass vial, both containing narcotics residue, and a glassine of heroin, as fruits of an unlawful arrest.
The only witness at the hearing was Police Officer Louis Despaigne, whose testimony the court found credible. On October 27, 1996, at about 4:50 p.m., Officer Despaigne, assigned to uniformed bicycle patrol for the Street Crime Unit, observed defendant Victor Allen sitting on a staircase in a schoolyard on 99th Street between First Avenue and F.D.R. Drive, New York County. Defendant was looking down, examining an object in his hand. Officer Despaigne rode his bicycle into the schoolyard in defendant’s direction. When the officer was about eight feet from defendant, the officer observed defendant holding a “cloud/’ glass pipe containing a white “past/’ substance in his right hand and a Newport brand cigarette box in his left hand. (Transcript of proceedings, at 17, Feb. 23, 1998.) From the officer’s police training and experience in prior arrests, he recognized the pipe as a “crack pipe” and the substance in the pipe as a narcotic residue. (Id., at 16.)
As Officer Despaigne approached defendant, defendant looked up and attempted to place the cigarette box “into the side of his right leg in an attempt to conceal it.” (Id., at 18.) The officer arrested defendant for possession of the crack pipe containing a narcotic residue. Immediately after the arrest, the officer searched defendant and found a glass vial with a white top containing crack cocaine residue inside defendant’s pants pocket and a glassine of heroin inside the Newport cigarette box.
CONCLUSIONS OF LAW
A. The Crack Pipe and Vial Containing Narcotics Residue
Possession of a crack pipe is itself a “telltale sign” of illegal use of controlled substances. (People v Edwards, 160 AD2d 501, 502 [1st Dept 1990].) When found to contain a narcotic *860 residue, the pipe established probable cause for defendant’s arrest. “So long as the quantity is sufficient to permit proper identification as a controlled substance, amount is immaterial”. (People v Mizell, 72 NY2d 651, 655 [1988].)
Officer Despaigne’s special training in the identification of narcotics paraphernalia and controlled substances, as well as his experience in narcotics-related arrests, provided a sufficient basis for the officer’s recognition of the substance that defendant possessed. (People v Edwards, 160 AD2d, supra, at 502; People v Burghart, 177 AD2d 866, 869 [3d Dept 1991].) Possession of an object, “especially when it is on their person” (People v Mizell, 72 NY2d, supra, at 656), is circumstantial proof that possessors know what they possess. (People v Reisman, 29 NY2d 278, 285-286 [1971].) This commonsense inference, plus defendant’s furtive behavior upon “the non-coercive approach of the police” (People v Martinez, 176 AD2d 761, 761-762 [2d Dept 1991], affd 80 NY2d 444, 448 [1992]), satisfied the state of mind element for purposes of defendant’s arrest for possession of a narcotic residue. (People v Sanchez, 86 NY2d 27, 33 [1995]; People v Mizell, 72 NY2d, at 656.)
Upon defendant’s lawful arrest, the ensuing searches and seizures present separate questions. Warrantless searches and seizures are unreasonable per se unless they fall within a recognized exception to the constitutional warrant requirement. (People v Diaz, 81 NY2d 106, 109 [1993].) The People rebut the presumption of unreasonableness only when they present facts that establish an applicable exception. (People v Pettinato, 69 NY2d 653, 654-655 [1986].)
The seizure of the crack pipe and glass vial easily fit within such an exception. The arresting officer properly seized defendant’s crack pipe incident to his lawful arrest and as evidence of the crime for which he was arrested. Similarly, the removal of the glass vial from defendant’s pocket was a proper search incident to that arrest. Once seized these items constituted evidence of the alleged crime in the arresting officer’s plain view. (People v Natal, 75 NY2d 379, 383-384 [1990]; People v De Santis, 46 NY2d 82, 87 [1978]; People v Payne, 233 AD2d 787 [3d Dept 1996].)
B. The Cigarette Box Containing a Glassine of Heroin
The search of defendant’s Newport cigarette box presents another, more difficult question.
*861 1. The Standard to Be Met by the People
Warrantless searches of closed containers seized incident to a defendant’s arrest are proper only under exigent circumstances. (People v Gokey, 60 NY2d 309, 312 [1983].) The Court of Appeals has recognized two such situations: where the arresting officer reasonably believes (1) the contents are evidence of the crime for which the defendant has been arrested and evidence that might be destroyed absent immediate seizure, or (2) the contents pose a danger to the officer or the public. (People v Smith, 59 NY2d 454, 458-459 [1983].)
While the sequence of the arrest and search may not be relevant (People v Diaz, 81 NY2d, supra, at 113), the Court of Appeals has stressed that the exigencies of preserving evidence and safety require the arrest and warrantless search to be “simultaneous” or “for all practical purposes conducted at the same time and in the same place.” (People v Smith, 59 NY2d, supra, at 459.) The police satisfy this requirement, for example, if they conduct the search “immediately upon encountering defendant.” (People v Gokey, 60 NY2d, supra, at 313.) Thus the Court limits warrantless searches of closed containers to situations where the arrest and search, if not simultaneous, are close in time and distance and aspects of a rapidly unfolding process of securing both the accused and the evidence. (Supra, at 312-313.)
In Gokey (60 NY2d, supra, at 313-314), the Court suppressed the marihuana contained in a duffel bag seized and searched incident to an arrest, notwithstanding that the bag remained within the defendant’s reach until he was arrested and securely restrained. The Court reached this result because the defendant was arrested for nonviolent crimes, the arresting officers showed no fear for their safety, and the evidence failed to support a reasonable belief that the search was necessary to prevent the defendant from destroying the bag’s contents. (Supra, at 313.) The Court in Smith, on the other hand, sustained the arrest and “simultaneous” search of the bag the defendant held in his hand, reasoning that the contents were accessible to the defendant when he was arrested, and the record justified a reasonable belief that the defendant might be armed. (People v Smith, 59 NY2d, supra, at 459.)
The Court of Appeals has cautioned that the rules governing the government’s powers to conduct warrantless searches and seizures must be grounded in “a predictable, structured analysis of the quality of evidence necessary to support [them].” (People v Johnson, 66 NY2d 398, 407 [1985].) The distinctions *862 in Smith and Gokey (supra) may not entirely clarify the parameters of authorized searches of closed containers seized from an arrestee’s person following a warrantless arrest. Nonetheless, the cases do provide guidance in analyzing “the particular facts and circumstances presented and * * * the purposes sought to be served by the exclusionary rule”. (People v Borges, 69 NY2d 1031, 1033 [1987].)
Where the police had information that a defendant arrested for sale of a controlled substance had secreted his drug supply on his person, for example, the First Department refused to suppress the narcotics found in packages seized from his person incident to his arrest. (People v Ortiz, 189 AD2d 715, 715-716 [1st Dept 1993].) Although the Court did not identify the other surrounding circumstances, it justified the search for “ ‘the protection of evidence from destruction or concealment’ ”. (Supra, at 716, quoting People v Gokey, 60 NY2d, supra, at 312.)
On the other hand, absent a prearrest report that the defendant had drugs on his person, the Court suppressed narcotics found in a change purse recovered from his pocket during a search incident to his arrest for sale of narcotics. (People v Rosado, 214 AD2d 375, 375-376 [1st Dept 1995].) No one made “any sustainable contention that the search of the purse was thought necessary for the preservation of evidence.” (Supra, at 376, citing People v Gokey, 60 NY2d 309, supra.) Therefore a warrant should have been obtained to search the purse.
In a situation like Ortiz (supra), an accusation that the defendant has narcotics on his person is a contention that the packages seized from him might hold evidence of his criminal conduct. Based on the Court’s more recent reasoning in Rosado (supra), however, relying on Gokey (supra), such an accusation does not, without more, amount to a contention that the packages had to be searched immediately to preserve or prevent concealment of that evidence.
Following the rule as applied in Rosado (supra), relying also on Gokey (supra) as the primary authority, brings the court back to the basic premise articulated above. Once a defendant has been arrested and a closed container seized from him, the police must obtain a warrant to search that container, absent a reasonable belief that the delay necessary to obtain the warrant would (1) pose a danger that the defendant might destroy the evidence, or (2) endanger the police or the public. The record at the suppression hearing must set forth and support that reasonable belief.
*863 2. The Evidence at the Suppression Hearing
Here, there was neither a claim that the cigarette box seized from defendant contained evidence of a crime, nor a claim that any such evidence was in danger of destruction or concealment. The arresting officer testified that he searched defendant and his Newport cigarette box “immediately” after the arrest. (Transcript of proceedings, at 7.) Only one officer conducted the arrest and search, however, militating against the inference they occurred with the simultaneity contemplated by People v Smith (59 NY2d 454, 459, supra). In any event, the search’s “immediacy” does not establish that it was necessary to preserve evidence, but only that, if an exception to the warrant requirement was otherwise established, the search may have been timely.
The arresting officer also testified that defendant was in handcuffs when searched. While that fact, standing alone, may not determine that the property had been reduced to the officer’s exclusive control (People v Wylie, 244 AD2d 247 [1st Dept 1997]), defendant’s handcuffed condition is certainly compelling evidence to that effect. (People v Rosado, 214 AD2d, supra, at 375-376; People v Bilbatua, 208 AD2d 404 [1st Dept 1994].) Under these circumstances, the record must demonstrate that despite the compelling restraint of handcuffs, defendant retained the capacity to destroy whatever evidence was contained in the cigarette box.
The officer testified that he discovered the glassine of heroin in the cigarette box the defendant “was holding” (transcript of proceedings, at 7), but it was never shown that defendant retained possession of the cigarette box during the arrest. In fact, the witness stated that upon confronting defendant, he “attempted to place the cigarette box next to his right leg.” (Id., at 6.) On this record, it cannot be determined whether, after attempting to conceal the cigarette box against his leg and then being arrested and handcuffed, defendant retained the capacity to destroy whatever evidence the cigarette box might have contained. When defendant was “subdued and his closed container * * * within the exclusive control of the police”, the only concern that might have justified a search would have been ensuring the safety of the officer or the public. (People v Smith, 59 NY2d, supra, at 458.) Based on the record, so small and innocuous a container apparently did not raise any such issue here.
Thus, however “immediately” the search was conducted after the arrest, the People failed to prove facts demonstrating that *864 the arresting officer reasonably believed the cigarette box might contain evidence of the offense for which defendant was arrested and, further, that a warrantless search of the box was necessary to preserve that evidence. (People v Gokey, 60 NY2d 309, 313, supra.) The evidence, in fact, tends to prove to the contrary.
Defendant’s cigarette box was undeniably a closed container in which he had a privacy expectation for constitutional purposes. Without a showing of the requisite exigent circumstances, the violation of that privacy right dictates suppression of the glassine of heroin found in his box. (People v Rosado, 214 AD2d, supra, at 375-376; People v Williams, 170 AD2d 834, 834-835 [3d Dept 1991].)
DISPOSITION
The court thus rejects the Hearing Officer’s recommendation that the glassine of heroin not be suppressed, but adopts the recommendations in all other respects. The Hearing Officer properly recommended that the motion to suppress the crack pipe and vial containing narcotics residue be denied. These items were properly seized incident to defendant’s lawful arrest and were evidence of the alleged crime in the arresting officer’s plain view. (People v Natal, 75 NY2d 379, 383-384, supra; People v De Santis, 46 NY2d 82, 87, supra; People v Payne, 233 AD2d 787, supra.) The glassine of heroin, in contrast, was not in plain view, but in a closed container that was improperly searched without a warrant.
Therefore the court denies suppression of the crack pipe and the glass vial, both containing narcotics residue, and grants suppression of the glassine of heroin.