People v Harris (2019 NY Slip Op 05099)





People v Harris


2019 NY Slip Op 05099


Decided on June 25, 2019


Appellate Division, First Department


Webber, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 25, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Judith J. Gische
Troy K. Webber
Anil C. Singh, JJ.


4069/07 9073 

[*1]The People of the State of New York, Respondent,
v
Willie Harris, Defendant-Appellant.



Defendant appeals from the judgment of the Supreme Court, New York County (William A. Wetzel, J.), rendered February 21, 2008, as amended July 21, 2008, convicting him, upon his plea of guilty, of criminal possession of stolen property in the fourth degree, and imposing sentence.




Seymour W. James, Jr., The Legal Aid Society, New York (Michael C. Taglieri and Justine M. Luongo of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Aaron Zucker and David M. Cohn of counsel), for respondent.



WEBBER, J.


We find that the court properly denied defendant's suppression motion. The court correctly determined that the requirements for the search of a closed container incident to a lawful arrest were met.
Police Officer Joseph Ayala testified that he and Police Officer Theresa Figueroa were patrolling on foot on Lexington Avenue in Manhattan on August 10, 2007, after "many reports with regards to grand larcenies and also petit larcenies" in the area.
According to Ayala, at approximately 3:20 p.m., he noticed defendant and codefendant Taylor Chauncey on the corner of 75th Street and Lexington Avenue. The men caught Ayala's attention because defendant was holding a large, green rolling suitcase while Chauncey was putting "something" into it. Based on his experience, Ayala believed that the two men were engaged in suspected larcenous behavior.
Defendant and Chauncey walked toward a clothing store named "Shen," located at 990 [*2]Lexington Avenue. Chauncey entered the store and placed four items into a "booster bag," which is a "box wrapped in a black plastic bag" with a "hollow" bottom. Defendant was standing in the doorway holding the door open, speaking with an employee. Chauncey then walked out of the store, and defendant followed him. Defendant and Chauncey stopped at the corner of 72nd Street and Lexington Avenue, where Chauncey took the items out of the booster bag and placed them in the suitcase that defendant was holding.
Defendant then entered a clothing store named "San Francisco Clothing" located at 975 Lexington Avenue, while Chauncey remained outside. Defendant took two sweaters, placed them underneath his "big white T-shirt," exited the store and walked down the street with Chauncey. When the two men stopped, defendant removed the two sweaters from underneath his T-shirt and put them into the suitcase.
Defendant and Chauncey proceeded to walk in and out of a few other stores, and then entered a clothing store named "Lingerie on Lex." About 20 seconds later, Chauncey exited the store and walked a few steps down the street. About five minutes later, defendant exited the store and joined Chauncey. Defendant removed several items of clothing from underneath his T-shirt and put them into the suitcase. Thus, according to the testimony, defendant and Chauncey walked into and out of at least three identified and several other unidentified stores.
Shortly thereafter, Ayala and between six and eight other plainclothes police officers approached defendant and Chauncey. When they approached, defendant immediately let go of the suitcase he was holding, and resisted arrest [FN1]. Defendant and Chauncey were both handcuffed. A knife was recovered from defendant's right rear pants pocket [FN2]. Ayala then "quickly opened up" the suitcase and "saw a lot of clothing inside." He then immediately closed the suitcase. Defendant and Chauncey were transported to the precinct. At the precinct, the suitcase was searched.
The officer's testimony, and the reasonable inferences that could be drawn therefrom, established that defendant's arrest and the search of the suitcase he was carrying were contemporaneous, that the suitcase was in defendant's grabbable area, and that it was not in the exclusive control of the police (see People v Smith, 59 NY2d 454 [1983]). Furthermore, the police properly inspected the suitcase for their own safety and to prevent any destruction of evidence.
It is axiomatic that a search incident to a lawful arrest is an exception to the warrant requirement. In the context of warrantless searches of a closed container that is within a defendant's "grabbable area," the People must show that the search was "not significantly divorced in time or place from the arrest" (People v Jimenez, 22 NY3d 717, 721-722 [2014] [internal quotation marks omitted]). The People must also demonstrate the presence of exigent circumstances (People v Gokey, 60 NY2d 309, 312 [1983]). The exigent circumstances requirement is met if the search was conducted in the interest of "the safety of the public and the arresting officer, and the protection of evidence from destruction or concealment" (id.).
Here, as the officers approached defendant, he immediately dropped the suitcase he was holding. The suitcase, which fell to defendant's feet, was in defendant's "grabbable area" at the time of his arrest (see People v Smith, 59 NY2d at 459 ["(a)t the time of arrest (the) defendant was holding the briefcase in his hand; its contents were, therefore, readily accessible to him"]; [*3]see People v Velez, 154 AD3d 527, 528 [1st Dept 2017] ["(n)otwithstanding that (the) defendant had been handcuffed by the time the wallet was searched, the wallet was within his grabbable area and had not been reduced to the exclusive control of the police], lv denied 30 NY3d 1109 [2018]). This is in sharp contrast to People v Thompson (118 AD3d 922, 923 [2d Dept 2014]), cited by the dissent. There, the defendant, who was wearing a backpack, was observed engaging in a marijuana sale to an unknown male. After approaching the defendant and after a brief conversation, the defendant attempted to punch the officer and attempted to flee. The officer gave chase, momentarily grappling with the defendant, causing the backpack to fall to the ground. Following the defendant's ultimate arrest, the officer returned to where the backpack had fallen, searched it and recovered a semiautomatic pistol. The Appellate Division, Second Department, found that the backpack, which was some 36 feet from where the defendant was ultimately arrested, was not within the defendant's grabbable area and therefore the warrantless search was unlawful. Clearly, here the suitcase was within inches of defendant. Further, the search of defendant's suitcase was reasonable as it was in close temporal and spatial proximity to his arrest
(Smith, 59 NY2d at 459 ["(t)he arrest and search of the briefcase were for all practical purposes conducted at the same time and in the same place"]; People v Wylie, 244 AD2d 247, 251 [1st Dept 1997] [search reasonable where it "occurred immediately after the defendant was arrested" and "was conducted right there on the street, a short distance from the defendant"], lv denied 91 NY2d 946 [1998]).
Officer Ayala's testimony that a knife was recovered from both defendant and Chauncey also established that there were exigent circumstances justifying the search of the suitcase (see People v Velez, 154 AD3d at 528 [search reasonable where "the officers had already recovered one razor blade from defendant"]; People v Capellan, 38 AD3d 393, 394 [1st Dept 2007] ["(t)he search was also proper as incident to a lawful arrest since a weapon had just been recovered from defendant's person and the bag remained in his grabbable area, and not in the exclusive control of the police"] lv denied 9 NY3d 873 [2007]).
Contrary to the suggestion by the dissent, an officer need not affirmatively testify to the exigency (see People v Diaz, 107 AD3d 401, 402 [1st Dept 2013], lv dismissed 22 NY3d 996 [2013], 22 NY3d 1137 [2014]). Rather, the exigent circumstances need only be inferred from the circumstances of the arrest (see People v Jimenez, 22 NY3d at 722; People v Diaz, 107 AD3d at 402; People v Watkins, 256 AD2d 159, 159-160 [1st Dept 1998], lv denied 93 NY2d 859 [1999]). Here, Ayala reasonably could have feared defendant posed a risk as defendant and his codefendant were armed with knives. Further, Ayala testified that defendant resisted arrest. Under the circumstances, it would have been reasonable for Ayala to have been fearful that defendant posed a threat.
Ayala's search of the suitcase was also justified to prevent the loss or destruction of evidence, as Ayala believed defendant and codefendant Chauncey had stolen clothing from approximately three stores and placed the clothing in the suitcase (see People v Burgos, 81 AD3d 558, 559 [1st Dept 2011] ["(t)he police properly inspected the backpack for their own safety and to prevent any possible loss, destruction or alteration of evidence"], lv denied 17 NY3d 793 [2011]). The dissent continues to ignore the facts that the suitcase was large enough to conceal a weapon and that the officer had just seen defendant stealing merchandise and placing it in the suitcase. Officer Ayala did not know whether there were weapons contained in the bag.
The dissent argues that at the time of the search of the suitcase, defendant was handcuffed and surrounded by more than eight armed police officers. According to the dissent, this shows there were no exigent circumstances. First, there was absolutely no testimony that defendant was surrounded by more than eight officers when the suitcase was searched. Ayala testified that he and his fellow officer approached defendant and the codefendant. He testified that he did not [*4]know where the other officers were located.
The testimony of Officer Ayala established that the suitcase was not in the exclusive control of the police at the time of the search. It remained at defendant's feet where he dropped it. Additionally, it has been consistently held that "[w]hether in fact defendant could have had access to the briefcase at the moment it was being searched is irrelevant" (Smith, 59 NY2d at 459). Rather, the inquiry is whether defendant could have had access to the suitcase at the time of his arrest (see People v Gokey, 60 NY2d at 312).
That defendant was handcuffed in no way negates a finding of exigent circumstances justifying a warrantless search (see People v Velez, 154 AD3d at 528). Although defendant was handcuffed during the search of the suitcase, there was a "realistic possibility" that he could have used means other than his hands
"such as kicking or shoving the arresting officer - to disrupt the arrest process in order to gain a weapon or destroy evidence" (Wylie, 244 AD2d at 251; see also People v Estrella, 288 AD2d 133, 133-134 [1st Dept 2001], lv denied 97 NY2d 754 [2002]).
Further, the reasonableness of the search is enhanced by the fact that the suitcase itself was evidence, was an instrumentality of the crime, and contained further evidence of the crime, namely the proceeds of the theft (see Wylie, 244 AD2d at 251). Defendant and the codefendant were observed taking property from at least three clothing stores and placing the property in the suitcase.
"[T]he justification for searches incident to a valid arrest are not only borne out of protection for police officers, but are also conducted for the purposes of discovering (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) contraband, the possession of which constitutes a crime; or (4) material which constitutes evidence of the crime or evidence that the person arrested has committed it" (People v Lewis, 26 NY2d 547, 552 [1970]).
Ayala testified that he quickly opened the suitcase, saw clothing inside, which he believed had been stolen from the various stores, closed the suitcase and then transported it to the precinct. This was a brief inspection to determine the contents of the suitcase and to ensure that it did not conceal any weapons in addition to the knife recovered from defendant's person and that recovered from the codefendant. It was not a full-blown search.
Accordingly, the judgment of the Supreme Court, New York County (William A. Wetzel, J.), rendered February 21, 2008, as amended July 21, 2008, convicting defendant, upon his plea of guilty, of criminal possession of stolen property in the fourth degree, and sentencing him, as a second felony offender, to a term of 1½ to 3 years, should be affirmed.
All concur except Renwick, J.P. and
Gische, J. who dissent in an Opinion by
Renwick, J.P.




RENWICK, J.P. (dissenting)


"The protections embodied in article I, § 12 of the New York State Constitution serve to shield citizens from warrantless intrusions on their privacy interests, including their personal effects" (People v Jimenez, 22 NY3d 717, 719 [2014]; see also People v Gokey, 60 NY2d 309, 312 [1983]). This appeal raises the recurrent issue of whether the police lawfully conducted a warrantless search of a closed container. The People justified the police conduct as a lawful warrantless search of a container incident to arrest even though it occurred after defendant and his companion had been arrested, handcuffed and surrounded by more than eight armed police officers, In the context of warrantless searches of closed containers incident to arrest, the People bear the burden of demonstrating the presence of exigent circumstances in order to invoke this exception to the warrant requirement. Unlike the majority, I would find that the People failed to [*5]meet their burden in this case as a matter of law, and thus defendant's motion to suppress should have been granted. I therefore respectfully dissent.
The relevant facts at the suppression hearing established the following. On August 10, 2007, Police Officer Ayala, of the Manhattan North Larceny Unit, was on tour with his partner, Officer Figueroa, on Lexington Avenue, walking around the neighborhood looking for shoplifting. At the northwest corner of 75th Street, Ayala saw defendant and Taylor Chauncey on the corner. It was summer, and defendant was dressed in summer clothes, but Chauncey was wearing a long, black coat, which was odd. As Ayala watched, Chauncey was putting something inside a large rolling suitcase that defendant was holding. The two men proceeded south on the west side of Lexington Avenue and stopped at a clothing store, Shen. There, Chauncey stepped into the store for two to three minutes and put several items into a "booster bag" he carried - a bottomless box wrapped in a plastic bag - and the two continued south, subsequently transferring the items to the rolling suitcase.
The two men continued this process, crossing the street to San Francisco Clothing, at 975 Lexington. There, defendant entered the store for about two minutes and, after coming out, transferred two sweaters from beneath the large white T-shirt he was wearing to the rolling suitcase. At 831 Lexington, both men entered a store called Lingerie on Lex, but Chauncey stepped back out to look up and down the street. Approximately five to seven minutes later, defendant also left the store and met Chauncey at the corner of 63rd and Lexington, again transferring items from inside his T-shirt to the rolling suitcase. Ayala never saw what the men were doing inside the last store.
The surveillance continued for some time. Eventually, at around 3:30 p.m., Ayala and his partner decided to arrest defendant and Chauncey when they reached the northwest corner of 62nd Street and Lexington Avenue. Ayala was the lead arresting officer. However, Ayala estimated that, besides his partner and he, six to eight officers approached defendant and Chauncey [FN3]. When Ayala approached defendant, the officer did not have his gun drawn; defendant was grabbing the handle of the suitcase, and there was some resistance, which the officer did not describe in any way. Instead, Officer Ayala testified that when he grabbed defendant's hand, defendant dropped the bag at once. After the arrest, Ayala frisked defendant and found a pocket knife in defendant's back pocket. At no time during the surveillance or during the apprehension did Ayala observe defendant display a knife to anyone. After defendant and Chauncey were handcuffed, Ayala opened the suitcase at the scene and saw "a lot of clothing inside [it]." Back at the precinct, the officers opened the suitcase for a more detailed inspection, finding a large amount of clothing presumably from the three stores.
After a hearing on the motion to suppress, the court denied suppression, but not for the reasons stated by the majority here. The court determined that defendant's arrest was supported by probable cause. It then found that "no [w]arrant was necessary," ruling,
"Gokey is not applicable to a case like this
where the probable cause involved stolen
property inside the bag, itself. The bag
wasn't coincidental. This wasn't a car stop
and there was a bag in the car. They had
observed this bag being employed as the place
where the stolen property was being secreted,
and no [w]arrant was necessary."
On appeal, the People acknowledge that the court erred by effectively ruling that a warrantless search of the container properly follows from the mere fact that it contains proceeds from a crime. Nevertheless, the People argue that suppression was still proper because the record establishes exigent circumstances for the warrantless search of the container. For the reasons explained below, I disagree with the majority's conclusion that the record establishes exigent circumstances for the warrantless search of the container.
"[A]ll warrantless searches presumptively are unreasonable per se," and, "[w]here a warrant has not been obtained, it is the People who have the burden of overcoming" this presumption of unreasonableness (People v Hodge, 44 NY2d 553, 557 [1978]). In People v Gokey (60 NY2d at 309), the Court of Appeals explicitly stated that exigent circumstances are a prerequisite to a search incident to an arrest and that the search is limited to a defendant's effects in his immediate control or "grabbable area." "Under the State Constitution, an individual's right of privacy in his or her effects dictate that a warrantless search incident to arrest be deemed unreasonable unless justified by the presence of exigent circumstances" (Gokey, 60 NY2d at 312). The Court identified two circumstances that may be considered exigent: where the safety of the police and the public is at stake, and when there is a need to prevent evidence from being destroyed or concealed (id.).
After Gokey, the Court of Appeals remained silent on the search-incident-to-arrest exception in the context of closed containers for over three decades. Finally, in People v Jimenez (22 NY3d at 717), the Court of Appeals readdressed the issue. It found that two separate requirements must be met in order for a warrantless search to be justified. First, the search must be conducted within close space and time of the arrest. The second, and equally important," requirement is that exigent circumstances must be affirmatively demonstrated (id. at 721-722).
In Jimenez, the Court of Appeals held that the warrantless search was improper. In Jimenez, police officers responding to a reported burglary in an apartment building encountered the defendant in the building's lobby. After the building's superintendent made gestures indicating to the officers that they should stop the defendant, the officers asked the defendant why she was in the building. The defendant was arrested for trespassing after she provided contradictory answers. While placing her under arrest, an officer removed the defendant's purse from her shoulder. The officer perceived the purse to be heavy and opened it, revealing a gun. The Court held that the gun should have been suppressed because the People failed to establish exigent circumstances justifying a warrantless search of the purse incident to arrest. The Court noted that neither of the police officers who testified at the suppression hearing stated that he feared for his safety or for the integrity of any destructible evidence, and, while affirmative testimony is not necessary, such a belief would not have been objectively reasonable under the circumstances. As this Court later pointed out in People v Morales (126 AD3d 43, 46 [1st Dept 2015]), "Jimenez reinforces the principle that containers cannot be searched incident to arrest unless the People affirmatively demonstrate exigency."
Unlike the majority, I would find that the People failed to establish the requisite exigent circumstances justifying a warrantless search of the suitcase. When defendant's suitcase was searched, he and his companion had already been handcuffed and placed under arrest. Both defendants were surrounded by 8 to 10 armed police officers. Neither defendant could have realistically threatened the officers' safety, nor made any meaningful contact with the suitcase's contents. Indeed, Officer Ayala, the arresting officer, did not testify that the suitcase was searched out of fear for the officers' safety or for the integrity of any destructible evidence (see [*6]Jimenez, 22 NY3d at 722-723). Nor is the conclusion that defendant retained the capacity to harm the officers or destroy evidence objectively inferrable under the circumstances here where defendant was under the forceful restraint of handcuffs and surrounded by multiple officers.
The circumstances here - that defendant had been arrested, handcuffed, and surrounded by multiple police offices, and that the suitcase was seized from defendant - constitute compelling evidence that the container had been reduced to the exclusive control of the police, thereby dissipating any concern the police may have had about its contents. In fact, this Court and others have consistently found no exigency, under similar circumstances, where the People failed to affirmatively establish that concerns of safety or destruction of evidence remained, despite the fact that the defendant had been subdued and the container was in the police's exclusive control (see e.g. People v Thompson, 118 AD3d 922, 924 [2d Dept 2014] [search of backpack not justified where the defendant was secured and the backpack was not within his immediate control]; People v Diaz, 107 AD3d 401 [1st Dept 2013] [search of backpack unlawful because the defendant was handcuffed at the time of the search and it was no longer in his control], lv dismissed 22 NY3d 996 [2013], 22 NY2d 1137 [2014]; People v Evans, 84 AD3d 573 [1st Dept 2011] [police officers did not fear for their safety since they were making a nonviolent arrest for smoking marijuana in public and the backpack was searched after the defendant had been handcuffed; it was found to be in exclusive control of the police]; People v Hendricks, 43 AD3d 361 [1st Dept 2007] [warrantless search of a paper bag was improper because the defendant had already been handcuffed and the officer testified that he did not believe that the bag contained a weapon]; People v Julio, 245 AD2d 158 [1st Dept 1997] [search of bag unlawful where it was in the exclusive control of the police and the defendant was unable to reach it because he was handcuffed and surrounded by police officers], lv denied 91 NY2d 942 [1998]).
Still, the majority argues that the search of the suitcase was justified because defendant offered some resistance (unexplained by the officers), and a pocket knife was found in his back pocket [FN4]. The majority's argument is not persuasive. With regard to resistance, Officer Ayala did not testify to the degree or type of resistance in which the defendant engaged that justified searching the suitcase despite that the suitcase was in the control of the officer and defendant had been handcuffed and surrounded by more than eight officers. Similarly, with regard to safety, this case involved a simple pocket knife found in defendant's pants pocket and discovered after the arrest. Officer Ayala did not testify that he observed defendant brandish or display any weapon to anyone to suggest that the suitcase might have contained a weapon. Nor did the officer state that any other exigent circumstances existed at the time of arrest. In fact, there was no testimony whatsoever as to why the search of the suitcase was conducted.
Under the circumstances, the majority's suggestion that any danger to the arresting officers or danger of evidence being destroyed had not dissipated even though defendant had been subdued (handcuffed and surrounded by at least eight officers) cannot be reconciled with the record. Nor does it comply with the Court of Appeals requirement, as reaffirmed in People v Jimenez, that the exigency must be reasonably believed to exist and affirmatively demonstrated. Quite the contrary, once defendant had been subdued and the suitcase placed under the control of the police officers, there was no reasonable possibility that defendant could have reached it (see People v Thompson, 118 AD3d at 924; People v Diaz, 107 AD3d at 401; People v Evans, 84 AD3d at 573; People v Julio, 245 AD2d at 158.
That defendant had been safely secured by the police at the scene is minimized by the majority, which upholds the search because the officers had a reasonable belief that the suitcase contained proceeds from a crime. Of course, that the arresting officer reasonably believed that the suitcase contained proceeds from a crime allows a court to consider whether any threat posed by the suitcase amounts to an exigency. However, this fact does not eliminate the immediate exigency requirement in order to justify a warrantless search (Jimenez, 22 NY3d at 722). "Once the [suitcase] was safely in the possession of the arresting officer, there was absolutely no reason why a warrant for a search of the [suitcase] contents could not have been obtained if there had in fact been any basis to suppose that the [suitcase] contained . . . evidence of the crime for which the arrest had been made'" (People v Hendricks, 43 AD3d at 364, quoting People v Rosado, 214 AD2d 375, 376 [1st Dept 1995], lv denied 86 NY2d 740 [1995]).
Finally, the cases relied upon by the majority are either factually distinguishable from this case or should not be relied upon by this Court. For instance, the majority relies primarily upon People v Velez (154 AD3d 527 [1st Dept 2017], lv denied 30 NY3d 1109 [2018]) and People v Estrella (288 AD2d 133 [1st Dept 2001], lv denied 97 NY2d 754 [2002]), which are easily distinguishable. In Velez, this Court upheld a search of defendant's wallet for a possible weapon where the defendant was arrested for an attack involving a razor blade, and a wallet was in his grabbable area. In Estrella, prior to the arrest, the police had been informed by the victim and by a witness that the defendant had used a knife in the commission of a sexual crime and had secreted it in his duffle bag. The arrest took place on a crowded subway platform. Under the circumstances, this Court upheld the search of the bag and the recovery of two knives.
Thus, both Velez and Estella involved specific attendant circumstances, including violent crimes in which the assailants used a weapon. Here, however, the arrest entailed no violent crime, just shoplifting during which no weapon was displayed (see People v Evans, 84 AD3d 573 [police officers did not fear for their safety since they were making a non-violent arrest for smoking marijuana in public]). Moreover, defendant was subdued and handcuffed, and the container was no longer within his control to permit him to reach for any evidence located in the container (id.). Common sense dictates that if a closed container does not present an exigency, a search of that container does not address an exigency.
The majority also relies upon People v Wylie (244 AD2d 247 [1st Dept 1997], lv denied 91 NY2d 946 [1998]), a case decided by this Court almost two decades before Jimenez. Wylie was also cited by this Court in Jimenez (98 AD3d 886 [1st Dept 2012]). Jiminez was reversed by the Court of Appeals. Thus, the approach to the exigency requirement used in Wylie and again applied by this Court in Jimenez is misguided and does not comport with current Court of Appeals precedent, and we should decline to follow it.
In Wylie, the defendant was suspected of being involved in a "phony robbery" (id. at 248). Initially, an employee of the Love Store in Manhattan reported to the police that while he was bringing a bag with the Love Store logo containing $7,000 of the store proceeds to a bank, a man attacked him in the bank lobby and stole the bag of money. Eventually, the store employee admitted to the police that it was a "phony robbery" that he had set up with "Paul Wylie," the defendant. The store employee provided a description of "Paul Wylie" and his home address to the police. Two police officers drove to the defendant's home and parked 50 to 100 feet from the entrance. When they observed a man meeting "Paul Wylie's" description come out of the building and walk toward them, one officer got out of the police car with his gun holstered, approached defendant and asked him if he was "Paul Wylie." When the defendant responded that he was, the officer told him to put his hands behind his back and placed him under arrest. The defendant was handcuffed and a search of his "right coat jacket" [sic] revealed a plastic bag with the Love Store logo. Inside the plastic bag, the arresting officer found a brown paper bag containing two bundles of money totaling $3,000 (id. at 248).
The motion court granted suppression of the money. Although the court determined that the defendant's arrest was supported by probable cause, it held that "once the defendant was placed in handcuffs, the police had a duty to secure a search warrant in order to search the bag, which was a closed container for Fourth Amendment purposes" (id. at 248). The motion court, citing People v Gokey (60 NY2d 309), stated that the warrantless search was illegal because the officers' actions did not evince a fear that the bag contained a weapon or that the evidence inside the bag might be destroyed (Wylie at 248). The Wylie Court reversed the suppression. The Wylie court, however, made no reference to what specific actions the defendant undertook, or what specifics from the crime, made it immediately necessary to search the bag. Instead, the Wylie Court generally stated:
"[T]he search in the present case occurred immediately after the defendant was arrested and handcuffed. Indeed, the search was conducted right there on the street, a short distance from the defendant. [The] [d]efendant easily could have reached for a weapon or attempted to rid himself of the money during the arrest itself, and the momentary delay in actually handcuffing defendant does not alter this result . . . . Moreover, a determined arrestee may use means other than his hands—such as kicking or shoving the arresting officer—to disrupt the arrest process in order to gain a weapon or destroy evidence. Such actions are a realistic possibility when the search occurs within close proximity to the arrest, as was the case here" (id. at 251).
The majority cannot, and does not, dispute that the approach utilized by the Wylie court is inconsistent with People v Jimenez. There, as indicated, the Court of Appeals made it abundantly clear that the exigency requirement is not merely met because the search was conducted within close space and time from the arrest (Jimenez at 721). "The second, and equally important, requirement is that exigent circumstances must be affirmatively demonstrated" (id. at 722). The Court of Appeals in Jimenez added that although "an officer need not affirmatively testify as to the safety concerns" posed by the exigency, the exigency "must be affirmatively demonstrated" (id. at 722-723). There must be a "robust evidentiary showing" to satisfy the search-incident-to-arrest exception (id.).
This Court in Wylie incorrectly reasoned that the exigency must not be affirmatively demonstrated because, when an arrest and search happened in close space and time, an exigency will always be present. Under Wylie's faulty reasoning, the only real inquiry is whether the search happened immediately. The Wylie Court never explained why the search of the container was immediately necessary, but instead attempted to use the inherently hostile nature of an arrest to demonstrate urgency. The Court made this point itself by stating that "a determined arrestee may use means other than his hands" to create a danger (Wylie, 244 AD2d at 251). Thus, Wylie assumes the existence of exigent circumstances and automatically authorizes a search by taking the position that an arrest is inherently an emergency circumstance, and an arrestee can always pose a threat, even if handcuffed.
The misplaced focus by this Court in Wylie has been rejected by the Court of Appeals in Jimenez which, as aforementioned, held that the exigency "must be affirmatively demonstrated" by a "robust evidentiary showing" (Jimenez at 722, 724). Indeed, the Wylie approach would allow the exigency exception to the warrant rule to reduce and limit the inquiry only to whether the search took place in close space and time to the crime, a decision that would remain entirely with the arresting officer and which would indeed result in a case of the exception swallowing the rule. We should decline to follow Wylie to the extent it is inconsistent with the Court of Appeals' pronouncement in People v Jimenez, and correct this anomaly.
In promulgating the exigency requirement, the Court of Appeals recognized that a [*7]constitutionally protected privacy interest remained in a closed container even after a defendant's arrest (People v DeSantis, 46 NY2d 82, 88 [1978], cert denied 443 US 912 [1979] ["To be sure, the arrest of [the] defendant, standing alone, did not destroy whatever privacy interests he had in the contents of the suitcase"]). Although case law instructs that there must be some reasonable basis to believe that a closed container presents an exigency (see People v Jimenez, 22 NY3d at 719; People v Gokey, 60 NY2d at 312), the majority obviates this requirement by effectively finding here that the mere possibility that an exigency might exist is sufficient to overcome a defendant's constitutional rights within the context of a closed container. This view must be rejected for the exigency requirement to fulfill its purpose that the privacy interest in a closed container can only be overcome by the need to dispel an actual exigency.
For the foregoing reasons, unlike the majority, I would grant defendant's motion to suppress the merchandise recovered from his rolling suitcase. Because the criminal possession of stolen property charges are based on the evidence obtained by means of the unlawful search of the rolling suitcase, the indictment should be dismissed (see e.g. People v Diaz, 107 AD3d at 401).
Judgment, Supreme Court, New York County (William A. Wetzel, J.), rendered February 21, 2008, affirmed.
Opinion by Webber, J. All concur except Renwick, J.P. and Gische, J. who dissent in an Opinion by Renwick, J.P.
Renwick, J.P., Gische, Webber, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 25, 2019
CLERK



Footnotes

Footnote 1:While Ayala testified that defendant "resisted" arrest, there were no further statements as to exactly how defendant resisted arrest.

Footnote 2:A knife was also recovered from codefendant Chauncey.

Footnote 3: Police Officer Ayala testified that, besides his partner (Figueroa) and himself, "there [were] two other teams from [his] [u]nit." Ayala then estimated that the[re] were "about six or seven, maybe eight" police officers from his unit at the scene of the arrest. 

Footnote 4: Neither the police nor the prosecution attributed anything illegal to defendant's possession of the pocket knife found in his back pocket.